JOHN MASSIMO ET AL. *v.* PLANNING COMMISSION OF THE TOWN OF NAUGATUCK

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 80960
WATERBURY

Memorandum filed February 10, 1989

*Sakal & Press,* for the plaintiffs.
*Bruce W. Brenia,* for the defendant.

FLYNN, J. The plaintiffs appeal to the Superior Court from the denial by the planning commission of the town of Naugatuck (commission) of their application for a special exception to excavate gravel from their premises at Brook Street and Donovan Road. Section 32 of the Naugatuck zoning regulations sets forth the procedure to be followed for special permits.

The court finds that the plaintiffs, as owners, are authorized under the statute to bring this action. They

have proved their ownership from the date of application to the date of trial.

The plaintiffs claim that their appeal of the commission's decision should be sustained for the following reasons: (1) an alternate member of a separate zoning commission appeared in opposition to the application at the public hearing; (2) the commission predetermined the application; (3) the status of the parcel as a nonconforming use entitled the plaintiffs to continue that use provided their meeting the standards for safety and control of the operation set forth in the regulations; (4) the decision is "without sufficient municipal interest" and amounts to "confiscation"; and (5) the reasons for denial given by the commission are not supported by the evidence at the hearing held on the application.

The plaintiffs' other claims, which were not briefed, are considered abandoned.

The court finds that General Statutes § 8-11 did not bar a zoning commission member who lived across the street from the plaintiffs' property from opposing the application individually. There was no predetermination. The plaintiffs did not establish nonconforming use status. Approval of the application was not required as submitted because the commission had the right to exercise reasonable regulatory power over it. The application was not granted by the lapse of time, the denial was not confiscatory, and, the evidence supports the reasons for denial. For all these reasons, the appeal is dismissed.

I

The first question raised is whether an alternate member of a zoning commission is barred by § 8-11 from attending a public hearing and speaking in opposition to an application before a separate planning com-

mission where his own property is across the street from the premises on which the special permit is being sought, and, if he is so barred, whether the planning commission's action is voided by his appearance. The plaintiffs contend that the member was so barred.

The commission admits that Daniel Adams spoke against the application at the public hearing but asserts that he was only an alternate member of the zoning commission and, as an alternate, was not barred from appearing before the planning commission. The commission further asserted that, in any event, since Adams lived across the street from the proposed gravel pit, he had the right to speak in defense of his own property rights and that, by speaking as a principal, he did not violate the statute by "appearing for or represent[ing] any other party" since Adams was appearing for himself.

This court rules that Adams was neither barred from such an appearance, nor was the commission's action voided by his appearance.

It is clear from the record that Adams, an alternate commissioner, lives across the street from the premises. Section 8-11 has two principal prohibitions. It first prohibits members of a zoning board from sitting on applications before that board in which they have an interest. That prohibition does not apply here since this is not a "participation" case, because the action was taken by a board on which Adams was neither a member nor an alternate.

The plaintiffs allege, however, that Adams violated the second statutory prohibition by appearing before another zoning board. The court disagrees.

The plaintiffs claim that the statute covers both alternates and regular members and argue that "a member is a member is a member." Neither does the matter

hinge on that tautological reference reminiscent of the late Gertrude Stein, nor does it hinge on regular or alternate status. The real issue is whether any member, regular or alternate, is barred from speaking at a hearing where one acts in one's individual interest as a property owner, rather than as an advocate for others.

The record shows that Adams did not purport to speak for anyone other than himself.

Section 8-11 aims its prohibition at zoning board members or alternates who act on behalf of, or, as a spokesperson for, third parties. "Appear for or represent any person," a phrase which connotes agency or acting as a spokesperson for others, is the statutory language used to express the prohibited act. It is that advocacy for others that the statute prohibits. It does not prohibit a member or alternate of a zoning commission from speaking individually before a planning commission about the effect of an application on his own property. This interpretation of the statute is consistent with the state and federal due process requirements that prevent persons from being deprived of their property and the opportunity to be heard about proposals affecting their property without due process of law regardless of whether they serve on a zoning commission.

What the plaintiffs' argument comes down to is that § 8-11 should be read to mean that any regular or alternate member of a zoning commission is forbidden to appear or speak on behalf of or against any *application* before a planning board. The words of the statute do not refer to a prohibition against appearing for or against an application, however, but merely prohibit "appear[ing] for or represent[ing] any person, firm, corporation . . . in any matter pending . . . ." The focus of the prohibition is representation of others. " ' "No

part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." ' " *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). Put another way, when the legislature used the phrase "appear for or represent," its purpose was to prevent the member from acting for or on behalf of others, and not from speaking for himself on an application affecting his own property. If it intended to prevent any zoning board member individually from either making an application or speaking against an application, the legislature could have accomplished that end without using the phrase "appear for or represent any person."

Adams' testimony was therefore not barred by § 8-11.

## II

The plaintiffs' second claim is that the commission unlawfully predetermined the application. This contention turns on whether, after the hearing, but prior to its vote at a subsequent meeting, a commission member could read from a prepared resolution denying the application where the commission had entered no discussion before rejecting the application. The court finds no unlawful predetermination in the commission's action.

To support a predetermination claim, there must be a showing that the commission had made up its mind regardless of any evidence or argument produced at the public hearing. *Daviau* v. *Planning Commission,* 174 Conn. 354, 358, 387 A.2d 562 (1978).

The named plaintiff testified at trial that at a meeting held after the hearing date, commission member Sandra Decker made the motion to deny his application by reading the motion from a yellow pad on which

the reasons for rejection were listed. He further testified that there was no discussion among the commissioners before the vote was taken at this meeting.

The record indicates that the hearing was conducted fairly and that people favoring and people opposing the application both had opportunities to present their views. Neither the state nor the federal constitution, nor their procedural due process requirements require zoning commissioners to come to their duties in a mental vacuum. See *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 245, 196 A.2d 427 (1963). A member is also not prevented from writing out a motion before making it orally.

The record and evidence do not support a finding of predetermination. As put forth in *Daviau* v. *Planning Commission,* supra, for the plaintiffs to prevail, they had to establish that the commission would have disapproved the application regardless of the evidence or arguments which were presented at the public hearing. In essence, the plaintiffs had to establish that the public hearing was a sham. In the absence of a showing that the public hearing was held merely to comply with the statutory requirements, it cannot be said that the action of the commission was arbitrary, invalid or predetermined. *Schwartz* v. *Town Planning & Zoning Commission,* 168 Conn. 285, 293, 362 A.2d 1378 (1975). The only evidence which was produced related to a commissioner's preparation to move to deny the application at another meeting held subsequent to the public hearing. The court finds this issue for the commission.

There was no predetermination of the application because there is no evidence that the commission had made up its mind prior to hearing the application.

The formal written resolution from which one member read during the voting on the application at a subsequent meeting, which the plaintiffs cite as evidence

to support their argument, is evidence of a permissible subsequent determination rather than evidence of an unlawful previous determination.

### III

The plaintiffs' nonconforming use argument claims that a nonconforming use as a gravel bank permitting their operation of a gravel mine is established in the record. They maintain that the nonconformity presents itself in two "postures": (1) the operation of the site as a gravel pit by the prior owners in 1926; and (2) the plaintiffs' previous operation under a one year permit granted under a subsequently repealed landscaping ordinance.

The plaintiffs applied for a special permit to remove gravel from four plots on a map. The scale of this map indicates they proposed to mine an area of approximately twenty acres, which had not previously been excavated.

The commission argues that, as the area which the plaintiffs sought to excavate is not in the same area where other excavation had been done, the nonconforming use argument is unavailing. Section 44-7 of the zoning regulations provides: "No nonconforming use of land shall be enlarged, extended or altered." Section 44-8 states: "No nonconforming use of land shall be moved to another lot or outside the lot."

The commission further urged at oral argument that the plaintiffs' attorney had agreed to and did in fact make the application for such permit. This last contention is borne out by a reading of the record. At no time did the plaintiffs insist at the public hearing that they had a right, by virtue of some nonconforming vested right, to carry on the excavation for which approval was sought.

General Statutes § 8-2 prohibits a municipality from preventing the continuance of a nonconforming use. A town is not prevented from regulating the operation of a nonconforming use under its police powers. Uses which have been established as nonconforming uses are not exempt from all regulation merely by virtue of that status. It is only when an ordinance or regulatory act abrogates such a right in an unreasonable manner, or in a manner not related to the public interest, that it is invalid. *Petruzzi* v. *Zoning Board of Appeals,* 176 Conn. 479, 483–84, 408 A.2d 243 (1979). *Lampasona* v. *Planning & Zoning Commission,* 6 Conn. App. 237, 239, 504 A.2d 554 (1986).

One of the purposes of § 8-2 is to prevent the extension of nonconforming uses. *Damick* v. *Planning & Zoning Commission,* 158 Conn. 78, 84, 256 A.2d 428 (1969). The plaintiffs' argument must fail because they failed to show, on the record, that a nonconforming use of the land existed, vesting some property right over the subject premises.

A nonconforming use is defined as a use or structure "in existence" on the date regulations are adopted that would make such a use illegal if begun thereafter. T. Tondro, Connecticut Land Use Regulation (1979) p. 62.

The General Assembly first generally authorized adoption of zoning by towns in 1926. Subsequent special acts authorized zoning in some specific towns as well.

The plaintiffs claim a nonconformity because of a use in 1926. The evidence in the record is vague and is merely a narration at the public hearing by the plaintiffs' attorney without entry of deeds, competent testimony, affidavits or other evidence to support the truth of this allegation. On the basis of this thin record, the commission was not obligated to find a nonconforming use.

It is noteworthy that the record is also devoid of evidence of the extent of such an alleged use. Logic dictates that there be some evidence upon the record that the use was substantial enough so that it could be determined that such a dedication of the premises was being made. A shovel full of gravel, carried off in a bucket once a year, does not a gravel pit make.

Furthermore, the plaintiffs failed to show, upon the record, whether zoning existed in Naugatuck in 1926 or, if it existed, whether it authorized gravel excavation in any zone. No map or other evidence was made a part of the record to show whether the plaintiffs' land was located in any zone which authorized gravel excavation. In other words, assuming, arguendo, that the plaintiffs' predecessors were using the application site for gravel excavation, the record is still devoid of evidence that they did so lawfully, either because no zoning existed or because zoning had been adopted but permitted the nonconforming use at that time. This kind of evidence is the sine qua non of establishing a legally vested right arising out of a nonconforming use. Since it is absent, the plaintiffs have not established any right under that doctrine by virtue of any activities alleged to have occurred in 1926.

Regarding the claim of nonconformity because of right arising out of a prior landscape ordinance which was no longer in effect at the time of the application, that prior ordinance was neither made a part of the return of record, nor did the defendant seek to amend the return to put it before the court. Therefore, it is not possible, in this proceeding, to determine what rights, if any, that repealed ordinance conferred. The court finds for the commission on this issue.

## IV

The plaintiffs next aver that the commission's action amounts to confiscation because they were not permit-

ted to remove gravel which they had a right to do as a nonconforming use. The contention that the plaintiffs had established the existence of a nonconforming use on the portion of the premises they applied to excavate is not supported by the record.

The constitution of Connecticut, article first, § 11 ensures that a public regulation of land use and development may not have such a severe impact on the use of property that the property can be said to have been taken by the public without payment of compensation. The mere decrease in value of property, however, does not justify a conclusion that there has been an unconstitutional taking. *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 695, 433 A.2d 990 (1980). There is no taking in the constitutional sense unless property cannot be utilized for any reasonable and proper purpose, as where the economic utilization of the land is, for all practical purposes, destroyed. *Horak* v. *State,* 171 Conn. 257, 261, 368 A.2d 155 (1976). Here, the plaintiffs have not proved that the economic utilization of their property is for all practical purposes destroyed, or that denial of the application so decreased the value as to amount to confiscation.

When property cannot be utilized for any reasonable and proper purpose, as where the economic utility of the property has for all practical purposes been destroyed, a confiscation or taking in the constitutional sense has occurred. *Wright* v. *Shugrue,* 178 Conn. 710, 713, 425 A.2d 549 (1979). The fundamental criterion for determining whether the government has, in fact, exceeded its police power in taking the property is the amount of the owner's loss. *Luf* v. *Southbury,* 188 Conn. 336, 349, 449 A.2d 1001 (1982). There is no evidence of any dollar loss here.

In *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 197 A.2d 770 (1964), a taking was found

to have occurred when the property, after rezoning, could only be used as a wildlife sanctuary or open space. The Supreme Court found that this did not provide the landowner with any reasonable or practical means of obtaining income or return from his property, while leaving him with all the burdens of it.

Both the federal and state constitutions have similar provisions requiring just compensation where a taking occurs. The confiscation issue can be raised in an administrative appeal from an amendment of zoning regulations. The commission has raised no objection as to the court's consideration of this issue in this appeal.

The plaintiffs still have use of their land. A gravel mine has not been permitted. Other uses of the property, however, are not foreclosed, including the residential use for which it is now zoned.

The commission contends, and the court agrees, that since the plaintiffs can make other uses of their property, they have not sustained their burden of proof as to this issue. The record indicates the concession in testimony from one of the plaintiffs' witnesses, Mr. Triano, that development is possible now, of at least part of the land on which the permit is sought, for residential use under the existing R-15 zoning. It was the plaintiffs' burden, which they have not sustained, to show that it could not be used for other purposes.

The commission's action in regulation is not destructive, confiscatory or so unreasonable as to be arbitrary. The plaintiffs have not shown that the regulation has so deprived them of the use of their property that, for all practical purposes, they have no economic benefit from it while being left with its burdens. See *Dooley* v. *Town Plan & Zoning Commission,* supra, 308. Furthermore, there is no evidence in the record from which the court could make any finding that the amount of the plaintiffs' loss was so great as to constitute a tak-

ing. There is no appraisal evidence to indicate the property's value as a gravel bank as opposed to some other use. In short, there is no evidence indicating the extent of any claimed loss to satisfy the fundamental criterion for determining that the exercise of police power amounted to a taking, necessitating use of the power of eminent domain and compensation. *Luf* v. *Southbury,* supra.

A municipality has sufficient interest in traffic safety relating to truck access and proposed topographical changes to engage in reasonable regulation. The plaintiffs, having made application under the ordinance, cannot now attack its constitutionality.

The plaintiffs maintain that General Statutes § 8-7d (a) required that the commission act no later than February 16, 1987, on the application heard on October 6, 1986, and, that when it did not do so, it lost any "interest" in the matter before it. What this argument ignores is that, unlike General Statutes § 8-26 governing subdivision applications, § 8-7d (a) does not expressly provide for automatic approval where a decision is not made within sixty-five days of any extension. Although not mentioned in their brief, the record indicates that the plaintiffs were granted extensions of time on February 2, February 27, April 6, and May 18, 1987. The plaintiffs filed their last revision to their application on May 14, 1987. The extensions were for the benefit of the plaintiffs because the record indicates that the initial application was incomplete and failed to annex information required by the regulations. The record also indicates that the plaintiffs could not complete the required tests because of weather conditions. The provisions of § 8-7d (a) are for the benefit of the applicant. *Vartuli* v. *Sotire,* 192 Conn. 353, 363, 472 A.2d 336 (1984). The standard to be employed in determining whether automatic approval is the necessary result of a board's failure to act within the statutory

time is whether it is "reasonable and rational" to require such a result. *Coastal Suburban Builders, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 489, 493, 479 A.2d 1239 (1984). The court finds that the plaintiffs waived any right they had to automatic approval by requesting for their own benefit the numerous written extensions of the time for deciding the application. It would be neither reasonable, rational nor fair to require an automatic approval under these circumstances.

It is neither reasonable nor rational to permit applicants who have employed numerous extensions to delay action on an application from the fall of 1986 until the spring of 1987, and then to claim, upon the application's denial, that the commission had nothing remaining before it to deny because the application as finally modified should have been automatically approved since it should have been acted upon four months sooner. Furthermore, such a result would be unjust. Zoning applications should be decided on a complete record. Neighboring property owners also have rights protected by zoning, including the right to appeal. It is one thing to make neighbors' rights hollow by express statute; see, e.g., General Statutes § 8-26; or case law; *Vartuli* v. *Sotire,* supra; where an applicant, who was not granted any time extension, insisted on his right to a decision within the statutory limit or, in the absence of a decision, automatic approval. It is, however, insupportable to do so when the delays were caused and requested by the applicant for the applicant's benefit. The application before the commission, last revised and supplemented by the plaintiffs on May 14, 1987, was, therefore, a matter in which the commission had a legitimate interest and could properly be the subject of its denial.

On the basis of the evidence and the record, the court finds this issue for the commission.

## V

The plaintiffs' final argument is that the reasons given for the denial of the permit are not reasonably supported by the record.

In granting a special exception, a commission acts administratively. Granting an application is necessary where all standards of the ordinance are met, but the application must be denied where they are not.

Where the commission has cited reasons for its decision, the court must search the record to determine whether the record supports any one of them. If even one of them is reasonably supported by the record, the court must dismiss any appeal based on that ground. *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 376 A.2d 385 (1977).

In this case the record indicates the commissioners actually walked the property. The application was denied with four votes against and one abstention, for the following reasons: "(1) Section 31.4.4, which states, excavation will not impair the future use of the property, will not impair good development and safe use of the property after the excavation; (2) Section 31.4.5, which states, the excavation will not depress land values or adversely affect surrounding property in the neighborhood; (3) Section 31.4.11, which states, that the proposed truck access will not create safety or traffic hazards; (4) Plan of Development, pg. 3, which states, maintain as much of the natural landscape and topographic features as possible; (5) Plan of Development, pg. 4, which states, prevent the intrusion of incompatible uses into residential areas; and (6) Plan of Development, pg. 5, which states, prevent excavations from impairing the future use or development of a site."

Section 32.5 of the zoning regulations sets out *"general considerations"* (emphasis added) which *shall* be considered by the commission before it acts on a special permit application. Subsection 2 of § 32.5 requires the commission to consider "the effect of the proposed use on any adopted plan of development for the Borough."

The application proposed removing 130,000 cubic yards of material from the site, which is a steep hillside, according to the contour map in the record. The plan of development in the record was adopted in 1974 and page three provides that the proposed use should maintain as much of the natural landscape and topographic features as possible. The ordinance refers to the plan of development, not the comprehensive town plan.

The commission actually viewed the premises. The court is therefore unwilling, in light of the record, to substitute its judgment for that of the commission that the proposed removal of 130,000 cubic yards of material from the application site would not maintain as much of the natural landscape and topographic features as possible.

Section 31.4.11 of the zoning regulations prevents the commission from granting a special permit where the proposed truck access will create safety hazards. This third reason for denial is reasonably supported by the record and the commission reasonably could have found that the proposed haul road for removal of material would create such a hazard.

Although the plaintiffs' attorney at the meeting during which the matter was voted down spoke of providing access from Donovan Road and Brook Street, the actual map filed shows access only from Brook Street.

The haul road shown on the erosion control plan which formed part of the application and is in the record shows only one way in and out through a road known as Brook Street near its junction with Cold Spring Circle. A member of the audience at the public hearing asked if the plaintiffs were "still going to run truck traffic the same way they originally planned." The plaintiffs' attorney responded that "the same pattern will be proposed with entrance from Donovan Road and [exit] on Brook Street so that they would have a continuous cycle and not any two-way traffic on any one of the roads." No amendment to the plan appears in the record, however. The application map filed shows only one way in and out through Brook Street which comes to a dead end near a boundary of the property. Section 31.4.11 of the zoning regulations permits the commission to deny approval where safety or traffic hazards would be created. The court will not substitute its judgment for that of the commission since the record indicates the roads in the area of the plaintiffs' premises are narrow and must service school buses. The commission reasonably could have concluded the truck access using only one haul road in and out would create a safety hazard. See also Naugatuck Zoning Regulations, § 32.5.3.

For all of these reasons the appeal is dismissed.