[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Richard Woodburn, appeals pursuant to General Statutes, Sec. 22a-43 and 22a-19 (a) a decision of the defendant, Redding Conservation ("Commission"), approving an application submitted by Gerald and Margaret Casiello ("applicants") for a permit to excavate and construct a pond and fill wetlands on their property located at 152 Gallows Hill Road in Redding. (Return of Record ("ROR"), Items No. 1, 2, 3, 4, 5.) Included within the application was a request to fill almost one thousand square yards of wetlands with varying amounts of wetlands soils excavated to create a small pond at the rear of the two acre lot on Gallows Hill Road. (ROR, Items No. 1, 2, 3, 4, 5.)
The Commission held an initial meeting on the application on April 7, 1992. At the meeting, the application was discussed and a site inspection was planned. (ROR, Items No. 6, 53.) The Commission met again on April 21, 1992, at which meeting it was decided that the application proposal constituted a significant activity and that a public hearing should be held on the application on June 2, 1992. (ROR, Items No. 8, 54.) Notice of the public hearing was published in the Redding Pilot, a local newspaper, on May 21, and 28, 1992. (ROR, Items No. 13, 14.)
The Commission held a public hearing on the application on June 2, 1992. (ROR, Items No. 16, 56, 63, p. 1.) The hearing was continued four times (ROR, Items No. 15, 17, 18, CT Page 7895 20, 21, 22, 57, 58, 59, 63, p. 3), until the process was concluded on August 4, 1992. (ROR, Items No. 24, 60, 63, p. 43.) During the hearing, process testimony from the applicants was heard, and the applicants submitted reports by experts. Further, the Commission visited the site twice for inspections. (ROR, Items No. 7, 26, 51.)
After the hearing, the Commission met on August 18, 1992 to discuss the proposal. (ROR, Items No. 25, 61.) On September 1, 1992, the Commission met again to vote on the application, and by a vote of three commissioners to two commissioners, approved the application. (ROR, Items No. 27, 62.) Notice of the Commission's decision was published in the Redding Pilot on September 10, 1992. (ROR, Items No. 28, 29.) The plaintiff, an environmental intervenor under General Statutes, Sec. 22a-19 (a) (ROR, Items No. 9, 10, 23), filed the present appeal on September 30, 1992. (ROR, Item No. 31.) On November 16, 1992, the plaintiff filed a motion for a temporary injunction. (ROR, Item No. 34.) This court denied the plaintiff's motion for temporary injunction by Memorandum of Decision filed on February 8, 1993. The instant matter was heard on April 29, 1993.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provision which created that right. See Simko v. Zoning Board of Appeals,206 Conn. 374, 377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional, and failure to comply subjects the appeal to dismissal. See Donis v. Board of Examiners in Podiatry, 207 Conn. 674, 683, 542 A.2d 726
(1988).
General Statutes, Sec. 22a-43 lists a category of persons entitled to bring an appeal to the Superior Court without having to prove aggrievement. General Statutes, Sec.22a-43 (a), provides in pertinent part:
 The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any CT Page 7896 regulation, order, decision or action made pursuant to said sections may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district.
Here, this court in its February 8, 1993 Memorandum of Decision on plaintiff's application for a temporary injunction, found that plaintiff was an appropriate environmental intervenor under General Statutes, Sec.22a-19(a).
 In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.
By permitting intervention under section 22a-19(a), the EPA permits the court to allow a private person to intervene in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action. However, an intervening party under section 22a-19 (a) may raise only environmental issues. Red Hill Coalition v. Conservation Commission, 212 Conn. 710, 715, 563 A.2d 1339
(1989). In the present case, because the plaintiff filed a notice of intervention at the Commission hearing in accordance with section 22a-19(a) (see ROR, Item No. 23), he has standing to appeal from the Commission's decision. Id. therefore, the plaintiff has satisfied the aggrievement standard. CT Page 7897
Pursuant to General Statutes, Sec. 22a-43 (a), an inland wetlands appeal must be served within the time specified in General Statutes, Sec. 8-8(b).
 Except as provided in subsections (c) and (d) of this section . . . any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. This appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes.
(Emphasis added.) General Statutes, Sec. 8-8 (b).
In the present case, the Commission's final decision is dated September 1, 1992 (ROR, Item No. 27), and legal notice of the decision was published in the Redding Pilot on September 10, 1992. (ROR, Items No. 28, 29.) Service of process was completed upon the Commission by the plaintiff on September 25, 1992. Therefore, because plaintiff commenced the action within fifteen days from the date that notice of the decision was published, plaintiff's appeal is timely.
In reviewing an agency or commission decision, "[t]he agency's decision must be sustained if an examination of the record discloses evidence that supports any of the reasons given." (Citations omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40, 525 A.2d 940
(1987). Further, "[t]he evidence . . . to support any such reason must be substantial . . . ." Id.
 `This so-called substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords `a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [The rule] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review . . . . [Finally,] the possibility of drawing two inconsistent conclusions CT Page 7898 from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'
(Citations omitted.) Id., 541. In reviewing an agency decision, the reviewing court "is required to search the record for reasons; it is not required to articulate them." Kaeser v. Conservation Commission, 20 Conn. App. 309, 312,567 A.2d 383 (1989).
LEGAL ISSUES ON APPEAL
The plaintiff raises five arguments in his brief in support of his appeal. The plaintiff asserts that (1) the Commission's decision approving the applicants' proposal was not supported by substantial evidence; (2) the Commission in reaching its final decision, did not review feasible and prudent alternatives to the applicants' proposed action; (3) the Commission's decision was fatally tainted by the alleged prejudice of Commissioner Robert Campbell; (4) the notice of the public hearing given by the Commission was not legally sufficient; and (5) the Commission failed to require the applicants to provide it with all the information necessary to make a decision.
1. Substantial Evidence
The plaintiff maintains that the Commission failed to request the proper information from the applicants upon which to base its decision. However, upon thorough examination of the record, the Commission's decision was supported by substantial evidence. The Commission held a public hearing and conducted two site visits (ROR, Items No. 7, 26, 51) to gather information about the application and to validate its findings. Further, during the proceeding, the Commission received numerous reports from consultants and experts in the wetland field. (ROR, Items. No. 44, 45, 46, 48, 50, 51.)
In particular, David B. Thompson, a district conservationist at the United States Department of Agriculture, stated in a post-inspection report that "[t]he proposed site has a watershed of approximately twenty three acres which is quite sufficient to sustain the pond you plan." (See ROR, Item No. 44.) Further, Frank E. Indorf, Jr., a soil and environmental consultant, stated that "[t]he CT Page 7899 pond will improve the overall wetland wildlife habitat of the present wetland area and will introduce a diversification of wetland wildlife into the area . . . ." (See ROR, Item No. 46, p. 3.) Evaluating the effect of the proposed construction, Indorf noted that "[t]he types of soils in this wetland area are well suited to this type of pond construction . . . . Overall, I see no reason why a controlled bypass dugout pond cannot be developed in this wetland area." (See ROR, Item No. 46, pp. 2, 4.)
While not all of the submitted reports were completely supportive of the applicants' proposal (see ROR, Items No. 47, 48), the record may contain contradictory evidence, and the possibility of drawing inconsistent conclusions does not prevent the agency's findings from being supported by the record. See Huck v. Inland Wetlands Watercourses Agency, supra. Here the record reveals substantial evidence that in approving the application the Commission concluded that the proposed construction would have a positive impact on the relevant area. Accordingly, the record contains substantial evidence to support the Commission's decision.
2. Feasible and Prudent Alternatives
The plaintiff contends that the record is clear that the Commission did not make a finding that a feasible and prudent alternative to the applicants' application does not exist, as required by section 7.7 of the Redding Inland Wetland Regulations:
 In the case of any application which received a Public Hearing, a license shall not be issued unless the Commission finds that a feasible and prudent alternative does not exist. In making this finding, the Commission shall consider the criteria and parameters set forth in this Section. This finding and the reasons therefore shall be stated in the record of the decision of the Commission.
"In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist." General Statutes, Sec. 22a-41 (b). "Municipal inland wetlands regulations must `give due consideration to the standards set forth in [General Statutes, Sec.] 22a-41.' . . ., CT Page 7900 which by its terms applies only to the commissioner of environmental protection, requires consideration of `all relevant facts and circumstances, including . . . [t]he alternatives to the proposed action . . . .'" Gardiner v. Conservation Commission, 222 Conn. 98, 109-110, 608 A.2d 672
(1992).
In Gardiner, the court applying the aforementioned standard found that:
 [T]he commission did consider many alternatives. The record indicated that numerous compromises and redesigns had been made, resulting from negotiations with town and state officials . . . . A prior application was submitted but was withdrawn for further modifications . . . . We agree with the [trial] court that `there was substantial evidence from which the Commission could have concluded that a permit with the conditions imposed was better than the option of no action . . . .'
Id., 110.
In the present case, the plaintiff maintains that the only feasible alternative to the proposed action, other than outright denial of the application, would be to disallow the filling of any wetland area. Initially, the applicants made several modifications to their original plan, including moving the location of the proposed pond in order to address the initial objections of the Commission's consultants. (ROR, Items No. 15, 19, 21.) Further, in the subsequent report submitted by expert, James MacBroom, after the applicants submitted their new proposal, Mr. MacBroom states that "[t]he pond will need periodic . . . maintenance to remove the sediments and organic material. With the revised pond location, this will now be possible from filled areas without further disturbing the wetlands." (See ROR, Item No. 50.)
After the aforementioned changes were made to the applicants' proposal, it is found that the Commission found that a feasible and prudent alternative no longer existed. The Commission undertook a thorough examination of the proposed activity, including making two site inspections (ROR, Items No. 7, 26, 51), and receiving numerous reports CT Page 7901 from experts in the wetlands field. (ROR, Items No. 44, 45, 46, 47, 48, 50, 51.) One of the reports relied on by the Commission in making its determination that a feasible and prudent alternative no longer existed was that of environmental consultant, Frank E. Indorf, Jr. (See ROR, Item No. 46.) In his report Mr. Indorf states:
 The construction of a pond on this site will increase the overall potential for diversity within a wetland system with expanded habitat potential for fauna and aquatic plants. The pond will improve the overall wetland wildlife habitat of the present wetland area and will introduce a diversification of wetland wildlife into the area . . . . The pond will also provide water for wildlife during the drier summer months. Also, a rich vegetative edge condition will be created. Berry producing wildlife attracting shrubs will be planted in the open end areas around the pond and will not only improve the overall esthetics of the area but will attract new species of birds and other types of wildlife. . . . The total enhancement of this wetland area will be notable.
(Emphasis added.) (ROR, Item No. 46.) It is evident that on the strength of Mr. Indorf's aforementioned report, and also on district conservationist, David B. Thompson's (ROR, Item No. 44) approval of the proposed activity, there is substantial evidence from which the Commission could have concluded that granting the applicants' application was better than the option of no action. See Gardiner v. Conservation Commission, supra. As a result, the Commission properly concluded that no feasible and prudent alternative to the applicants' proposed activity exists.
3. Fatally Tainted
The plaintiff asserts that the Commission's decision was fatally tainted by the prejudice of Commissioner Robert Campbell. The plaintiff claims that Commissioner Campbell was rude and intolerant to the plaintiff, and that he had prejudged that application in advance of the Commission's own deliberations. In his brief, the plaintiff asserts that Commissioner Campbell "exhibited palpable prejudice and hostility toward . . . [the plaintiff] both during and after CT Page 7902 the proceedings." Further, the plaintiff maintains Commissioner Campbell prejudged the application and that he proposed to cast an absentee vote in advance of the Commission's formal deliberations.
General Statutes, Sec. 22-42 (c), which addresses the issue of alleged bias of an agency or commission member, states in pertinent part:
 No member or alternate member of such board or commission shall participate in the hearing or decision of such board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense.
The Supreme Court has held that bias "can take the form of favoritism toward one party or hostility toward the opposing party. . . ." Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 554, 552 A.2d 796 (1989), citing Anderson v. Zoning Commission, 157 Conn. 285, 290,253 A.2d 16 (1968). "`The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case.'" (Citation omitted.) Gaynor-Stafford Industries, Inc. v. Water Pollution Control Authority, 192 Conn. 638,648, 474 A.2d 752 (1984). "To support a predetermination claim, there must be a showing that the commission had made up its mind regardless of any evidence or argument produced at the public hearing." Massimo v. Planning Commission,41 Conn. Sup. 196, 200, 564 A.2d 1075 (1989); see also Daviau v. Planning Commission, 174 Conn. 354, 358, 387 A.2d 562 (1978). The decisive question is whether a commissioner has actually made up his mind in advance of the public hearing, and the burden of proving the illegality of his action is on the plaintiffs. Furtney v. Zoning Commission, 159 Conn. 585,594-95, 271 A.2d 319 (1970).
In the present case, there is no evidence in the record that Commissioner Campbell had any financial interest in the outcome of the application or any disqualifying personal relationship with any opponent of the application. See Cioffoletti v. Planning Zoning Commission, supra, 554. Further, the plaintiff has failed to show that Commissioner Campbell had made up his mind regardless of any evidence or CT Page 7903 argument produced at the public hearing. See Massimo v. Planning Commission, supra, 200. Accordingly, it is found that because the burden of proving the illegality of a commissioner's action is on the plaintiff, Furtney v. Zoning Commission, supra, and the plaintiff has failed to satisfy such burden, the plaintiff's assertion that the Commission's decision was fatally tainted must fail.
4. Insufficient Notice
The plaintiff claims that the Commission's published notice of the public hearing was insufficient because the public was not informed as to the nature of the hearing. As a result, plaintiff asserts that the Commission's failure to provide notice rendered the Commission's decision null and void. General Statutes, Sec. 22a-42a(c) provides in pertinent part:
 No later than sixty-five days after the receipt of such application, the inland wetlands agency may hold a public hearing on such application. Notice of the hearing shall be published at least twice at intervals of not less than two days, the first not more than fifteen days and not fewer than ten days, and the last not less than two days before the date set for the hearing in a newspaper having a general circulation in each town where the affected wetland and watercourse, or any part thereof, is located.
Pomazi v. Conservation Commission, 220 Conn. 476, 484 n. 10,600 A.2d 320 (1991), citing General Statutes, Sec.22a-42a(c).
Clearly, an examination of the notice and its publication reveal that the requirements of section 22a-42a(c) were fulfilled. The notice of the hearing was published twice (ROR, Items No. 13, 14) at intervals of not less than two days, the first not more than fifteen days and fewer than ten days, May 21, 1992, and the last not less than two days, May 28, 1992, before the date set for the hearing, June 2, 1992, in a newspaper having a general circulation, the Redding Pilot, in the town where the affected wetland and watercourse was located. See General Statutes, Sec.22a-42a(c). CT Page 7904
Further, an examination of the notice shows that it provided sufficient information:
 The Redding Conservation Commission will open a Public Hearing on June 2, 1992 at 8:00 p.m. in the Old Town House, Redding Center, to consider the following:
 Application 92-09 Peg Gerry Casiello, 152 Gallows Hill Road. Construction of a small pond. Data on file at the Lane [sic] Use Office, Old Town House.
 Conservation Commission Town of Redding DAVID R. PATTEE Chairman
(See ROR, Item No. 14.) The notice contains the names of the applicants and the exact location of the proposed activity. Additionally, the notice explained that the hearing would be held by the Redding Conservation Commission, would be open to the public, and gave the date and time of the proceedings. Therefore, the Commission's notice satisfied the requirements of section 22a-42a(c); the plaintiff's claim of insufficient notice must fail.
5. Insufficient Information
Finally, the plaintiff argues that the Commission failed to have the applicants submit all of the necessary information in support of their application, as required by the appendix of the Redding Inlands Wetlands and Watercourses Regulations. However, a review of the appendix of the aforementioned regulations clearly shows that the appendix is merely a checklist that the Commission can use when requesting information from an applicant. (See ROR, Item No. 52, Appendix, p. 1.) ("The Commission and/or its authorized agent will check all items on the following list that are required [to be submitted by the applicant].") Therefore, the Commission's failure to require the applicants to submit all of the information listed in the appendix was not arbitrary or capricious or an abuse of discretion.
For the reasons stated above, the court finds that the CT Page 7905 Commission's decision to grant the applicants' application is supported by substantial evidence and, accordingly, the plaintiff's appeal is dismissed.
West, J.