[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
PERMANENT INJUNCTION
A claim for permanent injunction having come before the court, these are, therefore, by authority of the State of Connecticut, Jo command and enjoin you, Herbert C. Morgan, and each of your servants, agents and employees, and in your individual capacity, to remove from premises known as 8 Mountainville Road, Danbury, 81 inoperable vehicles or inoperable construction equipment stored upon the premises on or before midnight, July 1, 1994, and to refrain from storing all inoperable vehicles or inoperable construction equipment upon the premises, and from this day forward to refrain from cutting up or storing scrap metals upon said with premises, under penalty of $100.00 per day for each day you shall not comply with this order.
Dated at Danbury, Connecticut, this 12th day of May, 1994.
Joseph P. Flynn, Judge of the Superior Court
MEMORANDUM OF DECISION
Thomas Carlyle once said that honest work is the "grand cure CT Page 5738 of all the maladies and miseries that ever beset mankind."
Herbert C. Morgan, the defendant in this case, is a man who has made his living in and about the City of Danbury for over thirty-five (35) years as a carpenter, mason, excavator, and general contractor. From time to time, he has also collected, cut up old construction equipment and sold it as scrap metal. He completed the eighth grade of his education and shortly thereafter left school. He is, despite the popular stereotype of persons who engage in such trades, a quiet and reticent man, painfully shy in demeanor. As a boy, he began to store his construction equipment and materials at 8 Mountainville Road, Danbury.
This case is before the court on the City's application to make a temporary injunction permanent. In 1991, the court (Fuller, J.) issued a temporary injunction against the defendant, Herbert C. Morgan, after he did not appear on a rule to show cause. The injunction was stated in pertinent part as follows:
 These are, therefore, by authority of the State of Connecticut, to command and enjoin you, Herbert C. Morgan, to each of your officers, servants, agents and employees and in your individual capacity, to remove from 8 Mountainville Road, all heavy construction equipment and vehicles, along with all other types of unregistered motor vehicles, with the exception of one truck with a weight not exceeding three-quarters (3/4) of a ton, on or before October 21, 1991 and until further Order of the Court.
The matter came before the court on the claim for permanent injunction and was heard, and the court reserved judgment. While that was pending, the defendant filed bankruptcy. The court determined that the trustee was a necessary party since he might claim some interest in the items which were subject to the claim for injunctive relief. The trustee was cited in after an order to do so by the court, but claimed no interest in any of the property. When he did not appear, the court determined on the record that the automatic stay provisions of the U.S. Code did not apply to this proceeding. The trustee was thereafter defaulted.
The court grants the City's claims for permanent injunctive relief only as to inoperable vehicles or inoperable construction equipment located on the defendant's premises, or parts of such CT Page 5739 inoperable vehicles or equipment stored on the premises, and the defendant is ordered to remove from 8 Mountainville Road all such inoperable vehicles and construction equipment or parts thereof on or before July 1, 1994. This order is aimed only at the storage of inoperable vehicles and equipment, junk collecting, cutting up and sale of such junk and scrap on the premises, and the defendant is further enjoined from carrying on of any of these activities. While there is a portion of the defendant's income that has from time to time been derived from the collection and cutting up of scrap metal taken from inoperable machines, the court infers that it is not a significant portion, yet is probably the most unsightly and odious to his neighbors as compared to the other activities complained of. Furthermore, the court is not convinced from his evidence that there was a continuous dedication of the property for the uses which the court has just enjoined. It is appropriate, therefore, to permanently enjoin the storage and cutting up of inoperable vehicles, inoperable equipment and scrap metals on the premises.
The remaining claims for permanent injunctive relief are denied. The court is strongly of the opinion that to enjoin Mr. Morgan's use of the premises permanently, except as to the inoperable vehicles, scrap and junk, would result in an injustice and would be inequitable. Although Mr. Morgan's construction operations may seem unsightly to some of his newer neighbors, they are activities which he has continuously carried on at the Mountainville Road premises from the time he was a boy, without hindrance from the City until 1991.
General Statutes, Sec. 8-2 prohibits a municipality from preventing the continuance of a nonconforming use. A nonconforming use is defined as a use or structure "in existence" on the date regulations are adopted that would make such a use illegal if begun thereafter. Massimo v. Planning Commission,41 Conn. Sup. 196, 203 (1889), citing T. Tondro, Connecticut Land Use Regulation (1979) p. 62. The General Assembly first generally authorized adoption of zoning by towns in 1926. Subsequent special acts authorized zoning in some specific towns as well. Zoning was not established in the part of Danbury wherein the defendant's land lies until 1960. By 1960, Mr. Morgan had already commenced his use of that property for storage of construction vehicles, equipment and supplies, and that use was continuously in existence when the zoning ordinance went into effect and has so remained for over three decades. He has provided the court with pictures and credible testimony from CT Page 5740 himself and other witnesses as to the length, extent, continuous duration and nature of this use, and satisfied this court that no zoning applied to the land when he first commenced these activities.
The court is convinced that, taking into consideration his diffidence, his limitations educationally, his age, and the self-employed career path he has followed, if the defendant is enjoined from all use of his property for operation of his construction business in the way that he has used it since prior to adoption of zoning, it is highly likely the effect of such an order would be to deprive the man of the capacity to make an honest living and support himself and his family.
The City's position is that whatever rights to a nonconforming use Mr. Morgan had, he technically lost when he did not appeal the cease and desist order issued against him by filing an appeal with the Danbury Board of Zoning Appeals.
In the case of Greenwich v. Kristoff, 180 Conn. 575, the court held that since the defendant had neither complied with nor appealed to the Zoning Board of Appeals from the order issued by the plaintiff, Zoning Enforcement Officer, of the plaintiff, Town of Greenwich, to cease and desist from using his property as a rooming house on the ground that use violated the Greenwich Zoning Regulations, the trial court should not have refused to resolve the issues raised by the plaintiffs in their statutory (Sec. 8-12) attempt to enforce that order through an injunction.
In Kristoff, the plaintiff zoning enforcement officer ordered the defendant to cease and desist using his premises as a rooming house, since it was in violation of zoning regulations. The cease and desist order in Kristoff, like the cease and desist order in this case, was, in effect, a determination that the defendant did not have a valid nonconforming use. Id., 578.
The Kristoff court went on to state:
 Clearly the defendant had a statutory right to appeal the cease and desist order to the zoning board of appeals. The zoning board would in that proceeding determine whether the defendant, in fact, had a nonconforming use. The statutory procedure reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing CT Page 5741 court the benefit of the local board's judgment. Country Lands, Inc. v. Swinnerton 151 Conn. 27, 33-34, 193 A.2d 483 (1963). Instead of following this administrative process to establish the legality of his use after the receipt of the order to cease and desist, the defendant elected to await the institution of an action by the town to enforce the order.
 Section 8-6 (1) of the General Statutes provides that the zoning board of appeals shall have the power to hear and decide appeals from any order of the official charged with the enforcement of zoning regulations.
Id., 578.
However, in the Kristoff case, the trial court was directed by the Supreme Court to pass on the injunctive relief claim but not directed to grant the injunction. In the case of Gelinas v.West Hartford, 225 Conn. 575, 595-96, Justice Callahan writing for the majority stated:
 However, `[e]ven in an action brought by a zoning enforcement officer to require conformity with the zoning regulations, the granting of injunctive relief, which must be compatible with the equities of the case, rests within the trial court's sound discretion. [Emphasis supplied.] Dupuis v. Submarine Base Credit Union, Inc., supra, 356. Those equities should take into account the gravity and wilfulness of the violation, as well as the potential harm to the defendants. Berin v. Olson, 183 Conn. 337, 343, 439 A.2d 357 (1981).' Johnson v. Murzyn, 1 Conn. App. 176, 183, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471, A.2d 244 (1984).
Even where a statute provides for an injunctive remedy, "[t]his does not mean that a court is mechanically obligated to grant an injunction for every violation of law. [Citation omitted.] A judge retains a reasonable discretion to decide whether injunctive relief is appropriate even though it is authorized by statute." Burns v. Barrett, 212 Conn. 176, 194, citing Weinberger v. Romero-Barcelo, 456 U.S. 305,102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).
This action for injunctive relief is brought pursuant to section 8-12 of the General Statutes which gives an enforcement official the authority to institute a legal action to prevent unlawful violations of zoning ordinances. In a similar case involving a conservation commission, the Supreme Court put the CT Page 5742 matter in this perspective:
 We point out, however, that `[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a [trial judge] . . . is not mechanically obligated to grant an injunction for every violation of law. TVA v. Hill, 437 U.S. [153, 193, 98 S.Ct. 2279, 57 L.Ed.2d 117
(1978)]; Hecht Co. v. Bowles, [321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944)].' Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Put another way, we do not view the statutory grant of jurisdiction as destroying the discretion of a trial court in every case under this act.
Conservation Commission v. Price, 193 Conn. 414, 430.
Where an injunction is sought, "[t]he relief granted must be compatible with the equities of the case. Moore v. Serafin,163 Conn. 1, 8, 301 A.2d 238; Gerald Park Improvement Assn., Inc. v.Bini, 138 Conn. 232, 236, 83 A.2d 195. The issue of whether the relief demanded is appropriate to the circumstances is a question that must be considered and weighed upon trial." Dupuis v.Submarine Base Credit Union, Inc., 170 Conn. 344, 356.
What are the equities of this case? The City has a right to stop uses not permitted by the zoning ordinance. On the other hand, the defendant, except for his painful reticence, probably might have himself administratively established his right to the nonconforming use, either by speaking to Mr. Skelly, the Zoning Enforcement Officer, or by appealing the Zoning Enforcement Officer's cease and desist order to the Board of Appeals. The court infers that Mr. Morgan was not able to have a lawyer do either of these things because he was financially embarrassed. His home is in foreclosure and while this action was pending, he filed bankruptcy. Whatever his reason, Mr. Morgan had used the premises in the same way now complained about even before zoning existed in Danbury. Mr. Morgan lacks much formal education. He has been essentially self-employed all of his adult life. His occupation requires the ability to perform a variety of construction skills. He first engaged in construction as a youth and survived in business because of the ability to store his equipment, vehicles and materials on his home premises, thereby giving him a base of operations and keeping his overhead to a minimum. It is highly likely that if he is permanently enjoined from operating he will not be able to continue to be independent and self-supporting. CT Page 5743
What relief is compatible with the equities of the case and appropriate to the circumstances? The court believes that one of the circumstances to consider is the effect on this defendant's livelihood.
A long line of cases on enforcement of contractual covenants restricting competition and employment has recognized that in exercising equitable injunctive powers, the court must balance equities in determining whatever to grant relief or setting the scope of any relief granted. Scott v. General Iron WeldingCo., 171 Conn. 132. One of these equities is the interest of the person sought to be restrained in earning a living and whether its effect will be that he is "precluded from pursuing his occupation and thus prevented from supporting himself and his family." Scott v. General Iron Welding Co., supra, 137. The court believes that the effect of an unlimited permanent injunction on Mr. Morgan, as sought, would be devastating to his ability to pursue his occupation and be self-supporting.
The court does not suggest that any person who violates some zoning law should be permitted to do so free of injunctive restraint simply because enforcement of the law to which all are subject would adversely affect him financially. What the court does suggest is that as to the remaining claims for relief in this case, there is a lack of flagrancy on defendant's part. He really did no more after the cease and desist order than he did prior to zoning and prior to the order. The lawfulness of his use at the time of its initiation is a factor to consider. Any violation is more technical, than wilful. If this man were more voluble and less taciturn, more wealthy and not bankrupt, more educated and less ignorant of the ways of officialdom; if he were at the helm of a large company rather than a self-employed jack of all trades, he would have been better equipped to utilize the administrative remedy available to him.
The balance of the permanent relief sought is denied. The court has looked at the equities and the facts to determine what relief is appropriate to the circumstances. The court concludes that it would be unjust and inequitable to permanently enjoin the remaining uses sought to be enjoined which this defendant has established and continued on the premises for over three decades.
In accordance with the discretion vested in this court, the remaining claims for permanent injunctive relief are denied. CT Page 5744
The clerk is directed to enter judgment for the plaintiff in accordance with this memorandum.
Flynn, J.