[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Franz Douskey, Barbara Ayres Ball, Harland Mayo, Theresa Mayo and Sarah Heath, appeal a July 29, 1998 decision by the defendant planning and zoning commission of the town of Hamden (the commission) granting a special permit and site plan approval to the defendant Ravenswood Company, LLC (Ravenswood).
On May 15, 1998, Ravenswood applied to the commission for a special permit to construct multi-family housing on its 6.3 acres of property located at 39 Ives Street in Hamden. Ravenswood proposed to construct "56 attached, luxury residential units to be contained within 5 buildings, all under common ownership. " The commission held a public hearing on July 14, 1998 at which Hamden residents voiced concerns about matters such as traffic and pedestrian safety, preservation of the historical quality of the area, landscaping and parking. The commission concluded the hearing that same day.
On July 29, 1998, the commission convened to discuss and vote on the application. Ravenswood's attorney, Joan Molloy, attended the meeting and reiterated her position and understanding about the proposed parking plan for the development. The commission granted the special permit and approved the site plan subject to several conditions.
In their appeal, as amended, the plaintiffs allege that the commission failed to "give consideration to the safety and intensity of traffic circulation on the site and in adjacent streets, the location and size of the proposed use, and the nature and intensity of the proposed use as required by Section 826 of the [zoning] Regulations." Further, the plaintiffs allege that "Commissioner Chairman Howard Luppi refused to allow CT Page 9980 plaintiff Sarah Heath of 50 Ives Street to make an oral presentation," that "[a] t the [public] hearing the applicant failed to produce substantial evidence to prove that the application conformed with the Plan of Development," that "[t]he project did not comply with § 718 of the Hamden Zoning Regulations," that the commission failed to consider "site plan review criteria under Regulations Section 844," and that "[t]he Commission participated in ex parte communications with the applicant, and took and relied on additional information after the public hearing was closed."
 I A.
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. ZoningBoard of Appeals, 237 Conn. 184, 676 A.2d 831 (1996). Based on the testimony of the named plaintiff, the court finds that all of the plaintiffs are aggrieved.
 B.
Ravenswood applied for a special permit and site plan approval. "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulation. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. . . .
"It is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the CT Page 9981 reasons given are supported by the record and are pertinent to the decision . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it. . . ." (Citations omitted; internal quotation marks omitted.) Whisper Wind Development Corp. V. Planning ZoningCommission, 32 Conn. App. 515, 520-22, 630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994); see also CRRA v.Planning Zoning Commission, 46 Conn. App. 566, 569-70,700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). However, "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . if the special permit process were purely ministerial there would be no need to mandate a public hearing. . ." Irwin v. Planning Zoning Commission,244 Conn. 619, 627, 711 A.2d 675 (1998).
"A site plan is a plan filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations. It is a physical plan showing the layout and design of a proposed use, including structures, parking areas and open space and their relation to adjacent uses and roads, and containing the information required by the zoning regulations for that use. The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations." (Internal quotation marks omitted.) Cybulski v.Planning Zoning Commission, 43 Conn. App. 105, 110,682 A.2d 1073 (1996).
 C.
"Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably. Wnuk v. Zoning Board ofAppeals, 225 Conn. 691, 695-96, 626 A.2d 698 (1993). In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. Huck V. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540-41, 525 A.2d 940 (1987). The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury CT Page 9982 verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id., 541-42. The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. Torsiellov. Zoning Board of Appeals, 3 Conn. App. 47, 49, 484 A.2d 483
(1984). The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site; Id., 49-50; or through their personal knowledge of the area involved. Burnham v. Planning ZoningCommission, 189 Conn. 261, 267, 455 A.2d 339 (1983). Where a zoning authority [as here] has expressed the reasons for its decision, a reviewing court may only determine if the reasons given are supported by the record and are pertinent to the decision, and the authority's action must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) Connecticut Health Facilities, Inc. v.Zoning Board of Appeals, 29 Conn. App. 1, 10-11, 613 A.2d 1358
(1992). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 206, 658 A.2d 559 (1993) "The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . ." (Citations and internal quotation marks omitted.) Property Group, Inc. v. Planning Zoning Commission,226 Conn. 684, 697, 628 A.2d 1277 (1993)
The plaintiffs' claim of an illegal ex parte communication, however, is a claim that the process, rather than the commission's decision, was flawed. That claim is reviewed de novo by this court, although review still is based on the record in the absence of any evidence having been submitted outside of the record.
 D.
In its brief, Ravenswood derides the plaintiffs' arguments as follows: "In summary, the arguments set forth by the Plaintiffs regarding site plan deficiencies are as tedious as they are baseless. In the faint hope of throwing as many issues as possible against the wall to see if any stick, the Plaintiffs CT Page 9983 have consistently misrepresented and distorted the facts. The unfortunate result is a diminution of credibility regarding the entire appeal."
Such a venomous polemic is generally inappropriate and is always unnecessary cargo which must be jettisoned by the trier. Here, the plaintiffs' brief invites such an assault. "What is perhaps most startling about the Plaintiff's appeal is their apparent unwillingness to acknowledge and accept their burden of proof. They have proceeded with an argument which explains in great detail what they believe to be the many flaws of the Commission's reasoning without any regard for the standards of review which the court must apply." Brief of Defendant Ravenswood Company, LLC, pp. 8-9. Moreover, the plaintiffs' assumption, which they attempt to market, that the commission was duped by the Town Planner — that the Town Planner "instructed the Commission," that he "in sum and substance directed the Commission," that he "directed the Commission to neglect its duty" — is wholly unsupported by the record. The plaintiffs' speculation in footnote 7 that it is "possible that the Commissioners['] failure to adjudge the case due to some ex parte communication in addition to the Planners [sic] direction . . . [not] revealed in the Record," also is unsupported by the record and particularly disappointing.
Nonetheless, the court has sought to give full consideration to the issues properly raised by the plaintiffs. And where the law and the record require such a result, the appeal must be sustained based on a single issue despite the lack of merit as to others.
 II
The plaintiffs allege that "[t] he applicant failed to produce substantial evidence to prove that the application met the Special Permit Threshold criteria under Section 826 of the Regulations. . . ." In their brief, the plaintiffs argue that "[t]he Commission failed to take a hard look at how the particular proposed use would affect the particular area for which it was proposed using the particular standards specified in Section 826."
The defendants argue that there was sufficient evidence before the commission to support its decision. According to the defendants, "[f]aced with information from neighbors without CT Page 9984 supporting expert analysis, weighed against the opinion of the Town traffic expert, the review of its town planner, its own past history of approving a larger project for this site and the factual circumstances of the owner's concern for the neighborhood, the Commission decided in favor of approval."
Section 826 of the zoning regulations provides, in pertinent part, that "[i]n deciding whether or not to grant a Special Permit, the Commission shall give consideration to, but not be limited by, the following: [1] The health, safety and welfare of the public in general, and the immediate neighborhood in particular . . . [3] The location and size of the proposal. [4] The nature and intensity of the proposed use and any operations involved in the use. [5] The safety and intensity of traffic circulation on the site and in adjacent streets . . . [7] The harmony and appropriateness of the use and site design in relation to the general area and to adjacent properties." Where a statute provides that an adjudicator "shall consider" certain criteria in reaching a decision, "no single criterion is preferred over the others, and the [decisionmaker] is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case." Carpenter v. Carpenter,188 Conn. 736, 740-41, 453 A.2d 1151 (1982) In addition, section 826 expressly provides that the enumerated criteria are not exclusive.
The commission stated as a reason for its decision that "[t]he proposal should have no adverse impact on the health, safety and welfare of the surrounding area. The application also meets the Special Permit Threshold Decision criteria specified in § 826." Because these conclusions must be supported by the record; see DeBeradinis v. Zoning Commission, 228 Conn. 187 n. 7,635 A.2d 1220 (1994); the court searches the record to determine whether the record. reasonably supports the commission's conclusions. See Property Group, Inc. V. Planning ZoningCommission, supra, 226 Conn. 697.
Before coming to its decision, the commission examined site plans, a landscape and erosion plan, and elevations of the proposed development, which indicate the size and location of the site, as well as the nature and the intensity of the proposed use.[1] Therefore, there is substantial evidence on the record that the commission considered the location, size, nature and intensity of the application, as required by § 826(3), (4).Massimo V. Planning Zoning Commission, 41 Conn. Sup. 196, CT Page 9985 209-10, 564 A.2d 1075 (1989).
The commission also received evidence concerning the increase in traffic that would result from the proposed development. The town engineer, Al Savarese, recommended obtaining further traffic information, but did not oppose the project. The town's director of traffic and parking, Lee Davies, recommended that 28 unassigned parking spaces be made available at the site. Davies concluded that "[t]he Traffic Department does not object to the proposed condominium complex, provided adequate parking is provided." Town planner Richard Stoecker concluded that "[o]ff site impacts involving traffic, and stormwater drainage should not be significant." The South Central Regional Council of Governments provided Stoecker with average daily traffic data from 1997 that informed his revised recommendation to the commission on July 29, 1998. Stoecker also requested accident data from the department of transportation, but that information was not available at the time of the commission's decision. Based on the record, the court concludes that the commission did consider "[t]he safety and intensity of traffic circulation on the site and in adjacent streets," as required by section 826(5) of the zoning regulations.
At the public hearing, the commission learned about the design and landscape of the proposed development. Architect David Yager described how he had examined previous proposals for the site, which he indicated "were too dense or had too much impervious surface." Yager added that he aimed to design "something more of a residential character limited to two stories in height." The plans and diagrams reveal the appearance and layout of the proposed development. Ravenswood provided site plans of the proposed development, a landscape and erosion plan, diagrams of the proposed fencing, lamp posts, and entryway sign, and elevations and floor plans of the buildings and units. The record therefore reveals that the commission had information which it considered and upon which it could reasonably determine the appearance and design of the proposed development. Because the commission also received information about nearby homes from the plaintiff Douskey, the commission could reasonably conclude from the record that the design and use were in harmony with the surrounding area, as required by section 826(7) of the zoning regulations.
Further, the record reflects that the commission assessed the "health, safety and welfare of the public in general, and the CT Page 9986 immediate neighborhood in particular," in accordance with § 826(1).
The plaintiffs have not shown that the commission failed to consider the requirements of section 826 of the regulations.
 III
The plaintiffs allege that "the applicant failed to produce substantial evidence to prove that the application conformed with the Plan of Development." The plaintiff further alleges that "[t] he project did not comply with § 718 of the Hamden Zoning Regulations," and that "[t]here was no substantial evidence to conclude that traffic safety would be assured under the applicants plan."
In their brief, and in oral argument, the plaintiffs vigorously contend that the plan fails to comply with § 718 (b) of the zoning regulations, which they argue requires a "maximum depth of use" of 400 feet from Ives Street. The plaintiffs further argue that the plan does not comply with §§ 313 and 718(b) (which they claim require "continuous frontage" of at least 160 feet on Tves Street), § 311 (which they claim requires the dwelling units to be "located within 400 feet of Ives Street along the driveway"), § 763 (which requires "a front landscaped area . . . for all uses in all zoning districts"), § 753 (which they claim allows only one sign for the project), and § 765 (which requires landscaping "within the paved portion of the parking area").
The defendants argue that the Ravenswood plan complies with §§ 17(b), 313, and 311 because measurements for the purposes of these regulations should be taken from Whitney Avenue, rather than Ives Street. The defendants further argue that a landscaping plan in the record demonstrates compliance with zoning regulations §§ 763 and 765. The defendants argue that the Ravenswood site plan includes only one sign, thus complying with § 753(4)(g) of the zoning regulations.
In 1986, the Superior Court (Gray, J.) sustained an appeal of the zoning board of appeals' decision to deny a variance that would allow access to the subject parcel via Ives Street.Quatrano v. Zoning Board of Appeals, Superior Court, judicial district of New Haven at New Haven, Docket No. 241918 (July 19, 1986). The application for a variance in that case sought to vary CT Page 9987 § 718(a) of the zoning regulations, which allows vehicular access to multifamily dwellings exclusively via certain named streets, including Whitney Avenue.
The Quatrano variance is limited to the § 718(a) provision that would require access to the site via Whitney Avenue. The regulations providing for depth of use (§§ 718 (b)) and continuous frontage (§§ 313, 718(b)) indicate distances from Whitney Avenue, as provided in the regulations. The record shows that the Ravenswood project complies with these regulations. To import the Quatrano variance into other regulations, as the plaintiffs seek to do, would violate the principal that the terms of a variance "will be strictly construed to limit relief to the minimum variance which is sufficient to relief the hardship. " (Internal quotation marks omitted.) L G Associates, Inc. v. Zoning Board of Appeals,40 Conn. App. 784, 788, 673 A.2d 1146 (1996)
The plaintiffs refer to § 311, which regulates access to rear lots. This section does not support the plaintiffs' claim that the dwelling units must be "located within 400 feet of Ives Street along the driveway." The rear lot regulation is not relevant to this application because there is no rear lot involved in Ravenswood's proposed use.
The record does not sustain the plaintiffs' claim that the plan lacks a "front landscaped area." The landscape plan shows that frontage on both Whitney Avenue and Ives Street will be landscaped with various species of trees (some already in existence), as well as areas of "loam and seed."
The most recent plan on record does support the plaintiffs' claim that the Ravenswood plan includes two signs.[2] At the public hearing, architect David Yager stated, "we're proposing two signs that are set back, one on each side of the driveway." However, section 753(4)(a), upon which the plaintiffs rely for their claim that the plan may only include one sign, regulates the use of freestanding business signs. A "business sign" has been aptly defined as one which directs the public's attention to a business, commercial or professional activity or to a commodity or service or entertainment sold or offered on the premises.Upper Merion Township v. Valley Forge Associates, 16 Pa. Commw. 167,327 A.2d 874, 875-76 (1974). The applicable regulation that applies to signs for special permit uses, § 755(e), provides only that "[s]uch signs shall not exceed 16 square feet in total CT Page 9988 area." Because the business sign regulation to which the plaintiffs refer does not apply to this residential development, the commission could reasonably conclude based on the record that the signs comply with the regulations.
Section 765 of the zoning regulations provides that "[a]ll uses required to provide 30 or more off-street parking spaces shall have at least 10 square feet of interior landscaping within the paved portion of the parking area for each parking space and at least one tree for every 10 parking spaces or fraction thereof." This provision is designed for "parking lots," however, as evidenced by § 765(c). Further, although there are no areas of landscaping within the parking spaces, there are landscaped areas outside the perimeter drive, between some of the driveways, and in the center of the development area. Because of these landscaped areas, the commission could reasonably conclude from the record that the plan complies with the requirement of § 765(a) that there be at least one tree for every ten parking spaces, and that there be ten square feet of landscaped area within the parking area as a whole.
As for the plaintiffs' argument that the commission lacked substantial evidence on traffic safety, the court has already concluded, supra, that the commission received traffic safety reports from the town engineer, the director of traffic and parking, and the town planner. The commission was entitled to rely upon the representations of the experts who presented favorable reports on the site plan. Further, pursuant to the town planner's suggestions, the site plan was expressly made "subject to review by ConnDOT" presumably because the commission did not want to unconditionally approve the plan without the department of transportation's accident data, which had been requested, but which were not made available to the commission at the time of its decision. There is substantial evidence in the record to support the commission's conclusion that traffic safety would not be compromised.
 IV
The plaintiffs claim that Ravenswood application failed to satisfy the site plan criteria contained in § 844 of the regulations and that "[t]he commission failed to consider whether the project met each of the . . . site plan review criteria under Regulations Section 844." The plaintiffs argue in their brief that "[a]ny failure to comply with the site plan regulations CT Page 9989 necessitates a decision sustaining appeal of the Special Permit as well. (Section 826(8).)" The defendants argue that the criteria the plaintiffs describe are "general objectives which may be used as a basis for prescribing conditions to the Commission's approval," and that the criteria "are not requirements." (Emphasis in original.) The court agrees with the defendants' reading of § 844.
Section 844 prefaces its listing of site plan objectives with the statement that the commission "shall take into consideration the health, safety and welfare of the public in general and the immediate neighborhood in particular, and may prescribe reasonable conditions and safeguards to insure the accomplishment of the following general objectives." (Emphasis added.) The commission is therefore permitted, but not required, to condition approval upon the fulfillment of conditions that further the site plan objectives. The commission in this case did impose conditions in furtherance of the § 844 objectives. For instance, the "Engineering Department requires an updated storm drainage/detention concept engineering report for review and approval." Such conditions were not imposed by necessity, but they are permitted by § 844. The commission complied with § 844 of the zoning regulations.
 V
The plaintiffs allege that "[d]uring the public hearing Commissioner Chairman Howard Luppi refused to allow plaintiff Sarah Heath of 50 Ives Street to make an oral presentation including highly relevant and significant traffic and safety information, with supporting data and photographs in rebuttal to the applicant." In their brief, the plaintiffs argue that the ruling deprived plaintiffs of their right to fundamental fairness.
The transcript of the hearing reveals the following exchange:
 "MS. HEATH: . . . [M]y husband was not able to be here tonight. He wrote this letter which you each have a copy of in this packet. . . . He wondered if I could read this letter into the record. Would that be possible? "MR. CHAIRMAN: No. It will be placed in the record. If you want to just briefly comment about it."
The Connecticut Supreme Court "ha[s] recognized a common-law CT Page 9990 right to fundamental fairness in administrative hearings. `The only requirement [in administrative proceedings] is that the conduct of the hearing shall not violate the fundamentals of natural justice.' Miklus v. Zoning Board of Appeals,154 Conn. 399, 406, 225 A.2d 637 (1967). Fundamentals of natural justice require that `there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary. . . .' Parsons v. Board of Zoning Appeals,140 Conn. 290, 293, 99 A.2d 149 (1953), overruled on other grounds, Ward v.Zoning Board of Appeals, 153 Conn. 141, 146-47, 215 A.2d 104
(1965)." Grimes v. Conservation Commission, 243 Conn. 266,273-74, 703 A.2d 101 (1997). "The agency is supposed to be objective and has a responsibility to hear evidence from anyone who wants to present it on the application." R. Fuller, Connecticut Practice Series: Land Use Law and Practice (1993) § 20.4, p. 346.
The commission did not prevent Heath from communicating her own concerns. Nor did the commission prevent Douskey's letter from entering the record. The commission prohibited only the reading of the letter at the hearing. It was not required even to allow admission of that letter under the circumstances. Carlsonv. Kozlowski, 172 Conn. 263, 267-68, 374 A.2d 207 (1977);Cassella v. Civil Service Commission, 4 Conn. App. 359, 364,494 A.2d 909, aff'd, 202 Conn. 28, 519 A.2d 67 (1987); Fuller, op. cit. § 20.13. The court finds that neither Heath nor Douskey were deprived of the right to fundamental fairness.
At the hearing of the appeal, the plaintiffs claimed and adduced evidence that the commission did not open, and therefore did not consider, the packet of information presented by Heath. I have considered at some length the evidence weighing on both sides of this matter. I do not find that the plaintiffs have proven by a fair preponderance of the evidence that the commission or its staff failed to open the packet. Moreover, the members of the commission were sufficiently acquainted with the issues raised and the evidence and arguments presented at the public hearing when they voted on the application. Loh v. TownPlan Zoning Commission, 161 Conn. 32, 42, 282 A.2d 894 (1971). Even if every member of the commission did not examine Heath's packet of documents, I am persuanded that Planning Director Stoecker did so on their behalf. This is sufficient. T. S. v.Ridgefield Board of Education, 808 F. Sup. 926, 931 (D. Conn. 1992). CT Page 9991
 VI
The plaintiffs' final claim is that after the close of the public hearing, Ravenswood made, and the Commission received, an illegal and prejudicial ex parte communication. The court agrees.
The public hearing on Ravenswood's application concluded on July 14, 1998. On July 29, 1998, the Commission held a special meeting at which the application was considered, debated and voted on. At that meeting Stoecker read his staff report addendum and recommended approval of the application subject to several conditions contained in his memo. With respect to the issue of unassigned parking spaces, condition 8 in Stoecker's memo stated: "The Traffic Department recommends that one half space per unit, or 28 spaces be available to the public, without conflict with garage spaces. Parking is particularly needed in the vicinity of units four and five."
Although a transcript of the meeting is not in the record, the minutes reflect that Ravenswood's attorney, Joan Molloy, responded when Stoecker had completed his presentation to the commission. Those minutes state: "Attorney Joan Molloy . . . said she knows the Public Hearing is closed, but asked Mr. Stoecker to mention the additional parking spaces, recommended condition #8. Attorney Molloy said they have provided 21 spaces, and those are in excess of what is required. Ms. Molloy said there are 112 required according to the regulations. To come up with 28 spaces, they will have to alter the plan. The only place they could put them would be to pave the interior. They tried to show at the public hearing that they had more than adequate parking. They are providing 21, totally unassigned parking spaces, not in any driveway. Attorney Molloy approached the table and pointed out the parking spaces under discussion. There was discussion relative to-the parking provided in the vicinity of units four and five."
There followed some brief discussion. A vote was then taken approving, with two members dissenting, the application according to Stoecker's recommendation, except that condition 8 was altered to read: "At this time we have 21 unassigned spaces and will get two or three more adjacent to units 4 and 5 on the map, increasing the total to a minimum of 23 and a maximum of 24 unassigned spaces." CT Page 9992
The defendants argue that Attorney Molloy's remarks to the commission were nothing new. "[T]he applicant's attorney [had] suggested during the public hearing that Mr. Davies' [Director of Traffic and Parking] recommended number of unassigned parking spaces would impact the architectural theme of the development and therefore suggested a slightly lower number which was still more than required by the Regulations but addressed Mr. Davies' concerns. . . . Though the Commission indicated its concurrence with this compromise during the public hearing, it became apparent during deliberations that the staff and the Commission had forgotten this minor revision. Attorney Molloy simply reminded the commissioners of the compromise, and after a brief discussion, the Commission moved, ahead with a motion to approve the application." (Defendants' Trial Brief, pp. 25-26)
"Ex parte communication between an applicant and a zoning commission is improper. "While proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . The commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. . .
"Rudimentary administrative law clearly prohibits the use of information by a municipal agency that has been supplied by aparty to a contested hearing on an ex parte basis. . . .
"An ex parte communication raises a rebuttable presumption of prejudice. Once the plaintiff shows that an improper ex parte communication has occurred, the burden of showing that the communication was harmless shifts to the party seeking to uphold the validity of the zoning commission's decision. . . . The presumption of prejudice may be rebutted by evidence that the ex parte evidence or testimony was not received by the commission or was not considered by it and, therefore, did not affect the commission's final decision." (Citations and internal quotation marks omitted; emphasis in original) Daniel v. Zoning Commission,35 Conn. App. 594, 596-97, 645 A.2d 1022 (1994); see also Blakerv. Planning Zoning Commission, 212 Conn. 471, 480,562 A.2d 1093 (1989), on appeal after remand, 219 Conn. 139, 592 A.2d 155
(1991). Since there is no question but that Ravenswood's attorney CT Page 9993 made and the commission heard the communication, the commission and Ravenswood bear the burden of establishing that no prejudice resulted from the applicant's ex parte communication with the commission following the public hearing.
The defendants have not sustained their burden. First, Attorney Molloy's comments moments before the vote were not the same, nor necessarily substantially similar, to those she made at the public hearing. At that hearing, she observed that Ravenswood's application offered 20 unassigned and that they "may be" able to add seven to that.[3] Her remarks on July 29, 1998 about the application providing 21 parking spaces and the apparent "discussion [she and the commission had] relative to the parking provided in the vicinity of units four and five," (Return of Record, exhibit 30)[4] were made "without providing the necessary safeguards guaranteed to the opponents of the application and to the public." Daniel v. Zoning Commission,
supra, 35 Conn. App. 597. These remarks were the functional equivalent of an instant negotiation and amended application. Cf.Daniel v. Zoning Commission, supra, 35 Conn. App. 594 (commission violated plaintiffs' due process rights by considering revised application after public hearing).
Second, even if Attorney Molloy's remarks were considered similar to those she made at the public hearing, they were nonetheless improper advocacy. Our rule proscribes ex partecommunications, whether they be of fact; e.g., Pizzola v.Planning Zoning Commission, 167 Conn. 202, 365 A.2d 21 (1974);Carlson v. Fisher, 18 Conn. App. 488, 508, 558 A.2d 1029 (1989) (same); of law; e.g., Blaker v. Planning Zoning Commission,
supra, 212 Conn. 471 (procedural question); or, by logical extension, of advocacy. The rule against ex parte communications is designed "to prevent one party from exerting improper influence on the decisionmaker." Martone v. Lensink,207 Conn. 296, 303, 541 A.2d 488 (1988)
Third, apposite to the issue of prejudice, the improper communication was made temporally proximate to the commission's debate and vote. Indeed, they were made immediately before the brief discussion and the vote. Remarks made at that time have a particular propensity to influence the decisionmaker. Cf. Statev. Williams, 199 Conn. 30, 41, 505 A.2d 699 (1986) ("`supplemental charge . . . enjoy[s] special prominence in the minds of the jurors' because it is fresher in their minds when they resume deliberation."). CT Page 9994
Fourth, the only change the commission made to the staff's recommended action was to condition #8, dealing with the number of parking spaces, apparently to accord with Attorney Molloy's request. This is especially telling. Fifth, although the defendants were entitled to submit evidence of the non-prejudicial impact of Molloy's remarks to this court; Blaker V.Planning Zoning Commission, supra, 219 Conn. 146; they did not do so.
Any other holding would undermine the rights of all parties to fundamental fairness before land use commissions. Frequently, a commission holds its hearings on applications on one day and meets to discuss and vote on those applications on another. The temptation of counsel to "correct" the commission when he or she believes it is mistaken about a fact or assumption can be very great or, as here, irresistible. To allow advocacy to restart at such a critical point in time and then indulge in the fiction that it was non-prejudicial because it is duplicative of argument made at the public hearing would unnecessarily tempt parties or their counsel to ex parte communications with local commissions. Difficult as it may be when such commissions convene after public hearings have concluded, counsel are well advised to assume a posture approximating that of the proverbial potted plant.
The applicant Ravenswood made and the commission received an improper ex parte communication. They have not shown that the communication was nonprejudicial. For this reason, the appeal is sustained.[5]
BY THE COURT
Bruce L. LevineJudge of the Superior Court